IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-478-D

| | | |
|---|---|---|
| MATTHEW HODGE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA DEPARTMENT | ) | |
| OF PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On October 28, 2019, Matthew Hodge ("Hodge"), David Holbrook ("Holbrook"), Philip Kay ("Kay"), Jacob Franckowiak ("Franckowiak"), Brooks Dickerson ("Dickerson"), and Ralph Brown ("Brown") (collectively "plaintiffs") filed a class and collective action complaint against the North Carolina Department of Adult Correction ("DAC" or "defendant")[1] alleging failure to pay overtime wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 203 et seq., and breach of contract. See [D.E. 1] ¶¶ 3, 5. On September 2, 2020, the parties stipulated and moved for conditional collective certification under 29 U.S.C. § 216(b) and Local Civil Rule 7.1 [D.E. 36]. On September 8, 2020, the court granted the motion to conditionally certify the collective action [D.E. 37].

---

[1] Plaintiffs originally sued the North Carolina Department of Public Safety and Division of Adult Correction and Juvenile Justice. See [D.E. 1]. On January 1, 2023, any potential liability resulting from the claims in this case transferred from DPS to DAC. See [D.E. 98] ¶¶ 2–3. On February 20, 2023, the court added DAC as a defendant and dismissed DPS and the Division of Adult Correction and Juvenile Justice [D.E. 100].

On June 9, 2023, plaintiffs moved for class certification [D.E. 103] and filed a memorandum of law [D.E. 104] and exhibits in support [D.E. 104-1 to 104-26]. On July 10, 2023, DAC responded in opposition [D.E. 105]. On August 24, 2023, plaintiffs replied [D.E. 114].

On July 10, 2023, DAC moved to decertify the collective action [D.E. 106] and filed a memorandum of law [D.E. 107] and an appendix of exhibits in support [D.E. 108]. On August 24, 2023, plaintiffs responded in opposition [D.E. 114]. On September 22, 2023, DAC replied [D.E. 115]. As explained below, the court grants plaintiffs' motion for class certification and denies DAC's motion to decertify the collective action.

I.

Plaintiffs were or are non-exempt, hourly-paid employees of DAC working as corrections officers at DAC facilities across North Carolina. See Compl. [D.E. 1] ¶ 2. From 2016 to June 20, 2019, DAC employed Hodge as a Corrections Officer I. See id. at ¶ 13. Hodge worked at Rutherford Correctional Center, Swannanoa Correctional Center for Women, and Alexander Correctional Institution. See id. Since 2007, DAC has employed Holbrook as a Corrections Sergeant. See id. at ¶ 14. Holbrook has worked at Rutherford Correctional Center, Swannanoa Correctional Center for Women, and Alexander Correctional Institution. See id. Since March 2013, DAC has employed Kay as a Corrections Officer II at Craggy Correctional Center. See id. at ¶ 15. Since 2012, DAC has employed Franckowiak as a Corrections Officer at Avery-Mitchell Correctional Institution. See id. at ¶ 16. Since 2007, DAC has employed Dickerson as a Corrections Officer II at Columbus Correctional Institution. See id. at ¶ 17. From 2010 to June 2017, DAC employed Brown as a Corrections Officer at Alexander Correctional Institution. See id. at ¶ 18.

Plaintiffs were or are paid under Section 7(k) of the FLSA, which provides for payment of overtime based on a 28-day work period known as a "tour of duty." See id. at ¶ 4; 29 U.S.C. §

2

207(k). Plaintiffs are entitled to overtime pay for all hours worked over 171 hours during their 28-day tours of duty. See Compl. ¶ 4. DAC typically schedules plaintiffs to work 160 hours during a tour of duty. See id. at ¶ 37. Plaintiffs allege the that DAC asserts "a level of control over Plaintiffs . . . that is similar to a bargained for contract" in which DAC agrees to pay plaintiffs "for all hours worked, including gap hours [(i.e., hours between 160 hours and 171)], up to 171 hours in a 28-day tour of duty." Id. at ¶ 5. DAC has required plaintiffs to arrive before the start of their shifts to perform certain pre-shift activities and required plaintiffs to perform certain post-shift activities after going off the clock. See id. at ¶ 7. Even though plaintiffs performed these activities, DAC paid them for "a standard 12.25 hours per shift, regardless of the hours [plaintiffs] actually worked." Id. at ¶ 6. DAC requires plaintiffs "to remain vigilant and respond to emergencies, as necessary, at all times while they are performing this pre- and post-shift work at prison facilities." Id. at ¶ 8. DAC requires plaintiffs to "remain on duty from the moment they enter the prisons until they leave." Id.; see id. at ¶ 55. Because of these requirements, plaintiffs contend that all pre- and post-shift work is part of their "principal activities of guarding the inmates . . . and maintaining safety and security" in DAC prisons. Id. at ¶ 56.

Plaintiffs brought a collective action under the FLSA seeking unpaid overtime wages for pre- and post-shift activities plaintiffs performed beyond their 171-hour tours of duty. See id. at ¶¶ 78–84, 106–116. Plaintiffs also seek to certify a class asserting breach of contract for DAC's alleged failure to compensate proposed class members for pre- and post-shift activities performed during gap hours. See id. at ¶¶ 85–105, 117–126. Plaintiffs define the collective as "[a]ll current and former non-exempt, hourly-paid employees of [DAC] who worked as security personnel in a correctional institution at any time during the Relevant Time Period." Id. at ¶ 79. Plaintiffs define the proposed class as "[a]ll current and former non-exempt, hourly-paid employees of [DAC] who worked as

3

security personnel in a correctional institution in the State of North Carolina at any time during the Relevant Time Period." Id. at ¶ 86. The "Relevant Time Period" is "three years before the date of filing of the Complaint through the present day." Id. at ¶ 1.

## II.

## A.

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quotation omitted). Rule 23 "does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). A party seeking class certification must establish by a preponderance of the evidence that the action complies with Rule 23. See Behrend, 569 U.S. at 33; Brown v. Nucor Corp., 785 F.3d 895, 931–32 (4th Cir. 2015) (Agee, J., dissenting) (collecting cases).

Federal Rule of Civil Procedure 23(a) provides that a plaintiff may bring a class action as a representative party if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy. See Wal-Mart Stores, Inc., 564 U.S. at 349. To bring a class action, the proposed class representative must satisfy not only these requirements, but also one of the requirements from Federal Rule of Civil Procedure 23(b). See Fed. R. Civ. P. 23(b).

A court should interpret Rule 23 to promote justice and judicial efficiency. See, e.g., Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003). A court must ensure that

4

class certification fosters justice and judicial efficiency. See id. Rule 23 requires a court to take a "close look," Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quotation omitted), and engage in "rigorous analysis." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); see Ortiz v. Fibreboard Corp., 527 U.S. 815, 844–45 (1999); Amchem Prods., Inc., 521 U.S. at 622–25; Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 318 (4th Cir. 2006). Courts have broad, but not unlimited, discretion in deciding whether to certify a Rule 23(b) class. See Ortiz, 527 U.S. at 844–45; Amchem Prods., Inc., 521 U.S. at 622–25; Thorn, 445 F.3d at 317; Gunnells, 348 F.3d at 424.

At the class certification stage, a court may consider merits questions "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013); see Brown, 785 F.3d at 903 (same). Otherwise, "[a]n evaluation of the probable outcome on the merits is not properly part of the certification decision." Amgen Inc., 568 U.S. at 466 (quotation omitted); see Brown, 785 F.3d at 903. Generally, the persuasiveness of the class-wide evidence is for the jury. See Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 459 (2016). If no reasonable juror could believe the class-wide evidence, then plaintiffs would lack common proof. See id.

Plaintiffs propose a class consisting of "[a]ll current and former non-exempt, hourly-paid employees of DAC who worked as security personnel in a correctional institution at any time between October 28, 2016 and the date of judgment." [D.E. 104] 2; see Compl. ¶ 86.

1.

Rule 23 "contains an implicit threshold requirement that the members of a proposed class be readily identifiable." EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) (quotation omitted); see Hammond v. Powell, 462 F.2d 1053, 1055 (4th Cir. 1972); Soutter v. Equifax Info.

5

Servs., LLC, 307 F.R.D. 183, 196 (E.D. Va. 2015). Courts often refer to this requirement as the "ascertainability" requirement. See Adair, 764 F.3d at 358. In order to certify a class under Rule 23, a court must be able to "readily identify the class members in reference to objective criteria." Id. Although plaintiffs "need not be able to identify every class member at the time of certification," plaintiffs must demonstrate that class members will be identifiable "without extensive and individualized fact-finding or mini-trials." Id. (quotation omitted).

Plaintiffs contend class members "can be easily ascertained using DAC records." [D.E. 104] 8. In support, plaintiffs note "that Class Members are readily ascertainable because DAC provided a list of Class Members following conditional certification of the FLSA collective." Id. DAC does not contest ascertainability. See [D.E. 105] 2 (contesting "commonality, typicality, predominance, and superiority"). Accordingly, the proposed class is ascertainable. See, e.g., Scott v. Fam. Dollar Stores, Inc., No. 3:08-CV-540, 2016 WL 9665158, at *4 (W.D.N.C. June 24, 2016) (unpublished).

2.

As for numerosity under Rule 23(a)(1), "[t]here is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." Kelley v. Norfolk & W. Ry., 584 F.2d 34, 35 (4th Cir. 1978) (per curiam). "The issue is one primarily for the District Court, to be resolved in the light of the facts and circumstances of the particular case." Id.; see In re Zetia (Ezetimibe) Antitrust Litig., 7 F.4th 227, 234 (4th Cir. 2021); Holsey v. Armour & Co., 743 F.2d 199, 217 (4th Cir. 1984). Plaintiffs contend "DAC has employed a total of more than 16,000 Class Members during the Relevant Period." [D.E. 104] 8. DAC does not contest numerosity. See [D.E. 105] 3. Accordingly, the proposed class satisfies the numerosity requirement.

6

3.

As for commonality under Rule 23(a)(2), "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Wal-Mart Stores, Inc., 564 U.S. at 349–50 (quotation omitted); see, e.g., Gen. Tel. Co. of Sw., 457 U.S. at 156; Adair, 764 F.3d at 360; Bruzek v. Husky Oil Operations Ltd., 520 F. Supp. 3d 1079, 1093–94 (W.D. Wis. 2021); Rowe v. E.I. DuPont De Nemours & Co., 262 F.R.D. 451, 456 (D.N.J. 2009); Haywood v. Barnes, 109 F.R.D. 568, 577 (E.D.N.C. 1986). Commonality requires more than showing that class members "have all suffered a violation of the same provision of law." Wal-Mart Stores, Inc., 564 U.S. at 350. Instead, commonality requires that the class members' claims "depend upon a common contention" whose resolution "will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. Thus, a common question under Rule 23(a)(2) is one likely to "generate common answers" class-wide. Id. (quotation and emphasis omitted); see Brown, 785 F.3d at 909. "A single common question will suffice . . . ." Adair, 764 F.3d at 360; see Wal-Mart Stores, Inc., 564 U.S. at 350; Sullivan v. Saint-Gobain Performance Plastics Corp., No. 5:16-CV-125, 2019 WL 8272995, at *11–12 (D. Vt. Aug. 23, 2019) (unpublished); Bentley v. Honeywell Int'l Inc., 223 F.R.D. 471, 480–82 (S.D. Ohio 2004).

The commonality requirement does not necessarily "require that all the questions of law and fact raised by the dispute be common, just that any dissimilarities between the claims do not impede a common resolution." Hooker v. Citadel Salisbury LLC, No. 1:21-CV-384, 2023 WL 3020967, at *4 (M.D.N.C. Apr. 20, 2023) (unpublished) (quotations omitted). "The commonality test is qualitative." Id. "Quantitatively, almost by definition there will always be more individual . . . issues than common liability issues." Gunnells, 348 F.3d at 429. "Qualitatively, however, liability issues may far exceed in complexity the more mundane individual damages

7

issues." Id. (cleaned up). A question is not common "if its resolution turns on a consideration of the individual circumstances of each class member." Thorn, 445 F.3d at 319 (quotation omitted).

Plaintiffs contend that at least one of the following common questions of law and fact justify class certification:

1. Whether proposed class members perform the same duties associated with guarding and supervising inmates in DAC facilities;
2. Whether the same contracts and DAC policies, procedures, practices, terms, and conditions govern their employment and pay;
3. Whether proposed class members' hours of work are scheduled in the same manner;
4. Whether DAC has refused to pay them for performance of pre- and post-shift activities;
5. Whether DAC has not used timeclocks to record proposed class members' hours of work;
6. Whether DAC calculates their pay using the same process;
7. Whether the same method can be used to calculate the amount that proposed class members are entitled to be paid for overtime and straight time for performing pre- and post-shift activities;
8. Whether the same legal principles apply to proposed class members' entitlement to be paid for that work, i.e., the work is compensable; and
9. Whether pre- and post-shift activity must be paid.

See [D.E. 104] 9. DAC principally contends that plaintiffs are "[u]nable to connect their claims to any common policy or practice" and are "left only with anecdotes that they worked time performing a variety of disparate tasks, often on a one-off or sporadic basis, before and after their paid shifts that sometimes went uncompensated." [D.E. 105] 7. DAC also contends that "[n]one of the questions that Plaintiffs identify in their memorandum is a common question." Id. at 9–10.

Under the FLSA, employers must compensate employees for all time worked. See 29 U.S.C. §§ 203(g), 207(a)(1). Time worked, however, does not include "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(1)–(2). "Under the continuous workday rule, the

8

compensable workday begins with the first principal activity of a job and ends with the employee's last principal activity." Perez v. Mountaire Farms, Inc., 650 F.3d 350, 363 (4th Cir. 2011) (quotations omitted). "[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'" under section 254(a). IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005). An act is "integral and indispensable" if it "is an intrinsic element of [principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." Integrity Staffing Sols., Inc. v. Busk, 574 U.S. 27, 33 (2014) (quotation omitted).

Plaintiffs contend that their principal activity is "maintaining safety and security" at DAC prisons. [D.E. 104] 6; see [D.E. 114] 5. Plaintiffs also contend that "the continuous workday begins as soon as Correctional Officers enter a prison facility." [D.E. 114] 6. "Thus, all time within the facility is compensable." Id. Plaintiffs argue that "every task after going through security is compensable . . . because of the nature of the prison facility." Id. In support, plaintiffs note that "DAC . . . trains and requires Correctional Officers to remain alert and prepared to respond to inmate incidents and other emergencies at all times that they are on prison premises, not just during their paid shifts." Id. at 5; see, e.g., [D.E. 104-6] 6–10; [D.E. 104-7] 27–28; [D.E. 104-9] 5–10; [D.E. 104-10] 3–5; [D.E. 104-13] 6–8; [D.E. 104-18] 3; cf. Compl. ¶¶ 52–56, 88, 91. Correctional officers testified "that they fulfilled what they perceived as an obligation to respond whenever Codes announced the existence of such situations, including before and after their shifts." [D.E. 114] 6; see, e.g., [D.E. 104-6] 6; [D.E. 104-7] 27–28; [D.E. 104-9] 5–10; [D.E. 104-13] 6–10. DAC expects correctional officers to respond in such situations. See [D.E. 104-4] 51–52. Nonetheless, DAC generally pays plaintiffs only for their scheduled shifts, not for pre- and post-shift activities. See [D.E. 104] 5. Thus, plaintiffs argue that they satisfy Rule 23's commonality requirement. Common questions would include, for example, whether "swip[ing] in or otherwise log[ging] in

9

using DAC's Gatelog system as [plaintiffs] enter and leave the Gatehouse at their facility" is "integral and indispensable" to plaintiffs' work such that it begins the continuous work day, id. at 6, or whether remaining "alert and prepared to respond to inmate incidents and other emergencies at all times" constitutes compensable work. [D.E. 114] 11.

DAC responds that plaintiffs cannot show a common question because whether each pre- or post-shift activity is compensable would require many individual inquiries. See, e.g., [D.E. 105] 7–9. Plaintiffs do not contend, however, that each discrete activity is individually compensable. See, e.g., [D.E. 114] 10 (conceding "the Collective and proposed Class members do have slight variations in the precise pre- and post-shift activities that they performed and the amount of time they performed them"). Rather, plaintiffs argue that "after the start of the continuous workday—which occurs for every Correctional Officer when they pass through security and enter a DAC facility—the time [is] compensable regardless of what the officer is doing." [D.E. 114] 10 (emphasis in original).

DAC challenges how the continuous workday doctrine applies to plaintiffs, but its arguments fail to defeat commonality. The cases DAC cites demonstrate that the answers to the common questions might be unfavorable to plaintiffs. See, e.g., Busk, 574 U.S. at 35 ("The security screenings at issue here are noncompensable postliminary activities."); Alkire v. United States, 158 Fed. Cl. 380, 391 (2022) (holding that correctional officers' security screenings "are not 'indispensable' to their work"); Hootselle v. Mo. Dep't of Corr., 624 S.W.3d 123, 138–40 (Mo. 2021) (en banc) (holding that "there are no undisputed material facts showing that logging arrival and departure is an intrinsic element of supervising, guarding, escorting, or disciplining offenders" and "the corrections officers failed to establish sufficient undisputed facts entitling them to a determination . . . that the security screenings are indispensable and integral to their work"). DAC's

argument concerns the merits of plaintiffs' case, not commonality under Rule 23. Cf. Amgen Inc., 568 U.S. at 466; Brown, 785 F.3d at 903. Accordingly, the court rejects DAC's argument.

Next, DAC contends the court must reject plaintiffs' continuous workday theory on the merits because it is "enmeshed with the propriety of certification of the collective and Rule 23 class." [D.E. 115] 5 (citing Wal-Mart Stores, Inc., 564 U.S. at 351). DAC misunderstands the court's role at this stage. The court may consider merits questions "only to the extent . . . that they are relevant to determining whether" common questions exist. Amgen Inc., 568 U.S. at 466. Evaluating "the probable outcome on the merits is not properly part of the certification decision." Id. (quotation omitted); see Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974). Plaintiffs demonstrate at least one common question under their theory. Accordingly, the court need not consider whether plaintiffs' theory is correct. Furthermore, whether plaintiffs are engaged in a principal activity as soon as they enter a prison facility is a "fact-intensive" inquiry, Hootselle, 624 S.W.3d at 137, and courts have not universally resolved the question as a matter of law. See, e.g., Aguilar v. Mgmt. & Training Corp., 948 F.3d 1270, 1274 (10th Cir. 2020); Alexander v. United States, 156 Fed. Cl. 512, 525–26 (2021). Accordingly, plaintiffs' proposed class meets Rule 23's commonality requirement.

4.

As for typicality under Rule 23(a)(3), typicality focuses on whether "the claims of the representative parties [are] typical of the claims of the class." Haywood, 109 F.R.D. at 578; see Amchem Prods., Inc., 521 U.S. at 613; Gen. Tel. Co. of Sw., 457 U.S. at 157 n.13; Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). A typical claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Beattie v. CenturyTel, Inc., 511 F.3d 554, 561 (6th Cir. 2007) (quotation omitted); see Deiter, 436 F.3d at 466; Romero v. Mountaire Farms, Inc., 796 F.

11

Supp. 2d 700, 714 (E.D.N.C. 2011). The typicality requirement recognizes "the notion that as goes the claim of the named plaintiff, so go the claims of the class." Deiter, 436 F.3d at 466 (quotation omitted); see Soutter v. Equifax Info. Servs., LLC, 498 F. App'x 260, 264–65 (4th Cir. 2012) (unpublished); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998). Although the named plaintiff's claim does not have to be identical or perfectly aligned with absent members, "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." Deiter, 436 F.3d at 466–67.

Plaintiffs contend that they predicate "their claims and the Class Members' claims . . . on the same DAC practices and the same legal theories." [D.E. 104] 10. DAC responds that "proving the named plaintiffs' claims does not advance the claims of the absent class members" because there is "no question common to the claims of the putative class[,] and there is substantial variation in the putative class members' allegations of uncompensated time worked." [D.E. 105] 15. In support, DAC focuses on the differences between proposed class members' pre- and post-shift activities. See id. at 15–16.

As discussed, plaintiffs' theory makes the differences between proposed class members' pre- and post-shift activities irrelevant. Plaintiffs proceed under the theory that all activities are compensable as soon as a corrections officer enters a prison facility. See [D.E. 114] 10. Accordingly, the named plaintiffs' claims are typical of the proposed class members'. See, e.g., Compl. ¶¶ 52–56, 88, 91.

Next, DAC contends that plaintiffs' claims are not typical because supervisors adjusted some proposed class members' time sheets to compensate them for their pre- or post-shift activities. See [D.E. 105] 16–17. This argument, however, concerns individual damages. See, e.g., Bell v. PNC

12

Bank, N.A., 800 F.3d 360, 379–81 (7th Cir. 2015); Roldan v. Bland Landscaping Co., Inc., 341 F.R.D. 23, 32 (W.D.N.C. Feb. 1, 2022); Myers v. Loomis Armored US, LLC, No. 3:18-CV-532, 2019 WL 3338172, at *6 (W.D.N.C. July 25, 2019) (unpublished). "Rule 23 contains no suggestion that the necessity for individual damages determinations destroys commonality, typicality, or predominance." Gunnells, 348 F.3d at 427–28. Accordingly, the proposed class satisfies Rule 23's typicality requirement.

5.

As for the adequacy requirement under Rule 23(a)(4), "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc., 521 U.S. at 625–26 (quotation omitted); see In re Red Hat, Inc. Sec. Litig., 261 F.R.D. 83, 87 (E.D.N.C. 2009). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc., 521 U.S. at 625; see Sharp Farms v. Speaks, 917 F.3d 276, 295 (4th Cir. 2019); Beattie, 511 F.3d at 562. A conflict must be considered "fundamental" to defeat the adequacy requirement. See Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 184 (3d Cir. 2012); Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010); Gunnells, 348 F.3d at 430–31. "A conflict is not fundamental when . . . all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." Ward, 595 F.3d at 180 (quotation and alteration omitted); see Gunnells, 348 F.3d at 430–31. In assessing the representative's adequacy, courts may consider several factors including "honesty, conscientiousness, and other affirmative personal qualities." Shiring v. Tier Techs., Inc., 244 F.R.D. 307, 315 (E.D. Va. 2007) (quotation omitted); see In re Red Hat, 261 F.R.D. at 87.

13

Plaintiffs contend that their interests align with those of the proposed class members. See [D.E. 104] 11. Plaintiffs also note that their counsel "are respected attorneys with extensive experience in complex litigation, specifically in class actions, and who have successfully litigated—or are litigating—similar class actions involving Correctional Officers." Id. DAC concedes plaintiffs "can establish . . . adequacy of representation." [D.E. 105] 3. Accordingly, plaintiffs meet the adequacy requirement of Rule 23.

### B.

Plaintiffs seek to certify a class under Rule 23(b)(3). See Compl. ¶ 102. Under Rule 23(b)(3), a court may certify a class where the questions of law or fact common to class members predominate over any other questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3). The matters relevant under Rule 23(b)(3) include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Id. This four-factor list is nonexclusive. See Amchem Prods., Inc., 521 U.S. at 615–16.

Rule 23(b)(3) requires a plaintiff to demonstrate predominance and superiority. See Gunnells, 348 F.3d at 424 ("Rule 23(b)(3) class actions must meet predominance and superiority requirements not imposed on other kinds of class actions."); see, e.g., Thorn, 445 F.3d at 319; Gregory v. Finova Capital Corp., 442 F.3d 188, 190 (4th Cir. 2006). The Supreme Court has called a Rule 23(b)(3) class action the "most adventuresome" type of class action because it allows for

14

money judgments "binding all class members save those who affirmatively elect[] to be excluded." Amchem Prods., Inc., 521 U.S. at 614–15.

1.

As for predominance, common issues of law and fact predominate "where the same evidence would resolve the question of liability for all class members." Beaulieu v. EQ Indus. Servs., Inc., No. 5:06-CV-400, 2009 WL 2208131, at *20 (E.D.N.C. July 22, 2009) (unpublished); see Stillmock v. Weis Mkts., Inc., 385 F. App'x 267, 273 (4th Cir. 2010) (unpublished); Gunnells, 348 F.3d at 428.

The predominance inquiry focuses on whether "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc., 577 U.S. at 453 (quotation omitted). Individualized damages alone do not defeat predominance. See, e.g., Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1232, 1239 (11th Cir. 2016); Gunnells, 348 F.3d at 427–28; Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003); Hart v. La.-Pac. Corp., No. 2:08-CV-47, 2013 WL 12143171, at *2 (E.D.N.C. Mar. 29, 2013) (unpublished). Rather, a court may certify a class under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Tyson Foods, Inc., 577 U.S. at 453 (quotation omitted); see Crutchfield v. Sewerage & Water Bd. of New Orleans, 829 F.3d 370, 376 (5th Cir. 2016). "Generally, when a plaintiff challenges his employer's policy concerning overtime pay, the validity of that policy predominates over individual issues and class certification is appropriate." Berber v. Hutchison Tree Service, No. 5:15-CV-143, 2018 WL 3869980, at *9 (E.D.N.C. Aug. 14, 2018) (unpublished) (quotation omitted); see, e.g., Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598–99 (2d Cir. 1986); Ramirez v. Riverbay Corp., 39 F. Supp. 3d 354, 368–69 (S.D.N.Y. 2014).

15

Plaintiffs contend that "Class Members must all perform Pre- and Post-Shift Activities without pay, and are paid according to the same policies, regardless of where they work." [D.E. 104] 14. Plaintiffs also cite their expert, Dr. William Rogers, who has devised a method to calculate class-wide damages. See id. at 16–19. In opposition, DAC cites cases where courts denied class certification on unpaid wage claims because individual determinations predominated. See [D.E. 105] 17–21; see, e.g., Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191–94 (11th Cir. 2009); In re Bank of Am. Wage & Hour Emp. Litig., 286 F.R.D. 572, 588–90 (D. Kan. 2012). DAC also contends "individualized inquiries [are] necessary to prove whether DAC is liable to any particular plaintiff." [D.E. 105] 21–29.

The cases DAC cites provide no comfort to DAC in light of plaintiffs' theory of this case. In Babineau, the United States Court of Appeals for the Eleventh Circuit affirmed denial of class certification, in part, because employees engaged in "non-work-related activities . . . during the gap periods." Babineau, 576 F.3d at 1192. Here, however, plaintiffs contend that their gap periods consisted entirely of work-related activities because "[a] prison is a unique environment where DAC places heightened obligations on Correctional Officers as soon as they enter the facility." [D.E. 114] 12. In Bank of America, "no common proof exist[ed] that might demonstrate that each class member was subject to [an unofficial policy requiring off-the-clock work] or that the Bank would otherwise be liable to them for off-the-clock work" since "employees do not swipe a timecard on the way in and out of work." Bank of Am., 286 F.R.D. at 588. Accordingly, the claims differed from "off-the-clock claims in which all class members undisputedly are affected by the employer's allegedly unlawful policy" such as donning and doffing cases. Id. Plaintiffs contend here, however, that DAC's compensation policy affects each proposed class member "from the moment they enter

16

the facilities" and "variations in time spent on specific activities during their shifts are irrelevant." [D.E. 114] 12.

DAC contends that plaintiffs' breach of contract claim will require numerous individual inquiries to determine if DAC is liable to a given class member because "DAC can have no liability for breach of contract to any plaintiff who did not work uncompensated time." [D.E. 105] 26. This contention does not support denial of class certification. See, e.g., Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 757 (7th Cir. 2014); Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 823 (7th Cir. 2012); Kohen v. Pac. Inv. Mgmt. Co., 571 F.3d 672, 677 (7th Cir. 2009); Myers, 2019 WL 3338172, at *6; Berber, 2018 WL 3869980, at *9 (noting the plaintiff "does not need to prove that every member of the putative class was harmed before a class can be certified"). "If very few members of the class were harmed, that is an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate" DAC. Suchanek, 764 F.3d at 758 (quotation omitted).

Plaintiffs have introduced a method of common proof establishing damages. See [D.E. 104-22, 104-23]. Plaintiffs' evidence will include (1) a "comparison of Class Members' arrival times and shift start times which will show the time spent on Pre-Shift Activities for which they are not paid;" (2) a "comparison of Class Members' departure times and shift end times which will show the time spent on Post-Shift Activities for which they are not paid; and" (3) "[c]alculation of the amount of pay owed to Class Members for off-the-clock work, including for straight-time and for overtime." [D.E. 104] 16–17. This method resembles the method in Ward, in which the Fourth Circuit held that the calculation of "the difference between the amount defendants should have paid . . . and the amount defendants actually paid" sufficed to allow for common damages. Ward,

17

595 F.3d at 180. Accordingly, plaintiffs' proposed class satisfies the predominance requirement under Rule 23(b)(3).

2.

As for the superiority requirement, plaintiffs must demonstrate that proceeding as a class "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Thorn, 445 F.3d at 319; Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 147–49 (4th Cir. 2001). In assessing superiority, a court should consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. See Fed. R. Civ. P. 23(b)(3); Thorn, 445 F.3d at 319; Krakauer v. Dish Network L.L.C., 311 F.R.D. 384, 400 (M.D.N.C. 2015), aff'd, 925 F.3d 643 (4th Cir. 2019). A court also should consider "whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." Stillmock, 385 F. App'x at 274 (quotation omitted); see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010); 7AA Charles Allen Wright, et al., Wright & Miller Federal Practice and Procedure § 1779 (3d ed. 2005).

As for the extent and nature of any other litigation concerning the controversy, plaintiffs note no such litigation exists "and none is expected." [D.E. 104] 19–20. As for the desirability of concentrating the litigation in this forum, plaintiffs argue that this court is close to DAC and many class members. See id. at 20; see also Rikard v. U.S. Auto Prot., LLC, 287 F.R.D. 486, 493 (E.D. Mo. 2012) (holding "judicial economy is promoted by concentration of the claims in this [c]ourt"

18

for state wage claims where plaintiffs had already certified an FLSA claim in the court); Ondes v. Monsanto Co., No. 4:11CV197, 2011 WL 6152858, at *8 (E.D. Mo. Dec. 12, 2011) (unpublished) (same). Moreover, plaintiffs contend a class action is a superior vehicle for wage and hour cases because of the "relatively small amounts due to each individual." [D.E. 104] 20. DAC responds that a class action is not a superior vehicle because plaintiffs' claims require "a serious of mini-trials." [D.E. 105] 30.

As discussed, the proposed class under plaintiffs' theory of the case satisfies the other Rule 23 requirements. Thus, the court rejects DAC's argument. Cf. [D.E. 114] 2 n.2.

As for the class members' interests in individually controlling the prosecution or defense of separate actions, plaintiffs contend that any class member "concerned about protecting their individual interests" can opt out of the class. [D.E. 104] 19. DAC notes, however, that a fraction of potential class members opted into the FLSA collective action, and an even smaller fraction participated in discovery. See [D.E. 105] 30. Courts have held that plaintiffs fail the superiority requirement under arguably similar circumstances, because such statistics demonstrate "at least some members of the putative class do not support the class resolution of the state wage and hour claims and would prefer individual claims or not to pursue claims." White v. 14051 Manchester Inc., 301 F.R.D. 368, 383–84 (E.D. Mo. 2014); see Garcia v. Freedom Mortg. Corp., 274 F.R.D. 513, 516–17 (D.N.J. 2011). Courts also, however, have found that plaintiffs meet the superiority requirement where "almost 100 employees have affirmatively opted-in to the FLSA claim." Rikard, 287 F.R.D. at 493; cf. [D.E. 107] 2–3 (noting "approximately 1,442 current and former correctional officers and sergeants" have opted-in to plaintiffs' collective).

The court has considered the nature of plaintiffs' claims and the judicial efficiency of resolving them in one class action. The court finds that plaintiffs satisfy the superiority requirement.

19

See, e.g., Roldan, 341 F.R.D. at 33; McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 479 (E.D.N.C. 2010). Accordingly, plaintiffs satisfy the Rule 23 requirements and class certification is appropriate.

## III.

DAC moves to decertify the plaintiffs' collective action under FLSA. See [D.E. 106]. Under the FLSA, employees can bring suit on behalf of themselves and other similarly situated employees against employers for unpaid overtime and other claims. See 29 U.S.C. § 216(b). A collective action enables similarly situated employees to pool resources and promote judicial efficiency. See, e.g., Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 158 (S.D.N.Y. 2014); Faust v. Comcast Cable Commc'ns Mgmt., LLC, Civ. No. 10-2336, 2011 WL 5244421, at *2 (D. Md. Nov. 1, 2011) (unpublished). The FLSA is a special form of collective action, separate from class actions under Rule 23 of the Federal Rules of Civil Procedure. See 29 U.S.C. § 216(b). For example, unlike class actions under Rule 23(b)(3), in which the judgment binds class members unless they opt out of the class, collective FLSA actions require plaintiffs to give "consent in writing to become such a party." Id. Thus, FLSA collective action plaintiffs must be "similarly situated" and opt in to the class by filing consent with the court. See id.; Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc., No. 5:13-CV-810, 2017 WL 4322404, at *4 (E.D.N.C. Sept. 28, 2017) (unpublished); Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017); Jackson, 298 F.R.D. at 158.

Courts generally follow a two-stage process in determining whether to grant certification for a collective action under section 216(b). See, e.g., Sandoval-Zelaya, 2017 WL 4322404, at *5; Rosinbaum, 238 F. Supp. 3d at 743; Faust, 2011 WL 5244421, at *2; Williams v. XE Servs., LLC, No. 2:09-CV-59, 2011 WL 52353, at *2 (E.D.N.C. Jan. 4, 2011) (unpublished). "In the first stage, sometimes referred to as the 'notice stage,' the court makes a threshold determination of whether the

20

plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." Faust, 2011 WL 5244421, at *2 (quotation omitted); see Sandoval-Zelaya, 2017 WL4322404, at *5; Rosinbaum, 238 F. Supp. 3d at 743; McLaurin, 271 F.R.D. at 469; Parker v. Smithfield Packing Co., No. 7:07-CV-176, 2010 WL 11565605, at *3 (E.D.N.C. Aug. 23, 2010) (unpublished), report and recommendation adopted by 2010 WL 11565686 (E.D.N.C. Sept. 27, 2010) (unpublished). At the notice stage, this court granted the parties' consent motion for conditional collective action certification concerning the plaintiffs' FLSA claim. See [D.E. 37].

The second stage generally occurs after discovery and requires the court to engage in a fact-intensive inquiry to determine whether the putative class is "similarly situated" and whether certification is appropriate. See, e.g., Sandoval-Zelaya, 2017 WL 4322404, at *5; Faust, 2011 WL 5244421, at *2. The defendant typically initiates the second stage, as here, by moving for "decertification" of the class. See, e.g., Faust, 2011 WL 5244421, at *2.

The Fourth Circuit has not announced a test to determine whether employees are similarly situated under the FLSA. See Wade v. JMJ Enters., LLC, No. 1:21CV506, 2023 WL 6391683, at *10 (M.D.N.C. Sept. 30, 2023) (unpublished). Other courts consider "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 584 (6th Cir. 2009) (cleaned up), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016); see Martinez-Hernandez v. Butterball, LLC, No. 5:07-CV-174, 2011 WL 4549606, at *2–3 (E.D.N.C. 2011) (unpublished). The similarities between plaintiffs "must extend beyond the mere facts of job duties and pay provisions." Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007) (quotation

21

omitted). A named plaintiff may demonstrate that opt-in plaintiffs are similarly situated by showing that all plaintiffs allege FLSA violations under the same theory, but a common theory is not strictly required in every case. See O'Brien, 575 F.3d at 585. Plaintiffs need not show that they had identical jobs or responsibilities, but must show that their positions were similar in relevant characteristics. See Calderon v. Geico Gen. Ins. Co., No. 10CV1958, 2011 WL 98197, at *4 (D. Md. Jan 12, 2011) (unpublished).

As for the factual and employment settings of the plaintiffs, DAC reiterates many of the same arguments it raised in opposition to plaintiffs' motion for class certification. See, e.g., [D.E. 107] 18 (arguing plaintiffs "do not and cannot tie those activities to a unifying, unlawful department policy or practice" and "the alleged pre-shift activities performed, and whether those activities were compensated, vary by Plaintiff"), 25 (arguing "[b]asic differences abound—Plaintiffs worked in two different job categories with differing duties, at approximately 65 different work locations, and under hundreds of different supervisors"). As discussed, these differences are irrelevant under plaintiffs' theory of the case. Cf. [D.E. 114] 19 ("[U]nder Plaintiffs' theory and the continuous workday rule, all of the work is either compensable, or it isn't.").

As for individualized defenses, DAC lists several individualized defenses it "expects to assert." [D.E. 107] 27–28. For example, "DAC will assert statute of limitations defenses to some Plaintiffs' claims." Id. at 28. These defenses do not warrant decertifying the collective action. It would be inefficient "to deny the collective adjudication of these claims merely because the statute of limitations must be applied to each plaintiff individually when determining damages." Johnson v. Wave Comm GR LLC, 4 F. Supp. 3d 453, 460 (N.D.N.Y. 2014); see Butler v. DirectSAT USA, LLC, 47 F. Supp. 3d 300, 313 (D. Md. 2014). Plaintiffs also note that Dr. Rogers "can easily

22

exclude specific time periods from his analysis" such that only timely claims survive. [D.E. 114] 19. Thus, the court rejects this argument for decertification.

DAC contends it will contest awareness of some plaintiffs' alleged work. See [D.E. 107] 28. Given plaintiffs' theory, however, DAC fails to explain "why this defense is individualized as opposed to adjudicated on a collective basis." Butler, 47 F. Supp. 3d at 313. Plaintiffs contend that DAC should have compensated them for every minute plaintiffs spent in a prison facility no matter what each plaintiff was doing. Whether DAC was aware of this off-the-clock work or whether plaintiffs' theory means plaintiffs failed to "follow reasonable time reporting procedures," White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012), DAC could adequately raise the issue at trial through representative testimony. See Butler, 47 F. Supp. 3d at 313. Thus, the court rejects this argument.

DAC's remaining defenses turn on individual plaintiffs' damages claims, not liability. See, e.g., [D.E. 107] 28 (arguing "some Plaintiffs . . . have no claim to overtime compensation" and contesting "the existence of plaintiffs' uncompensated time"). Accordingly, DAC's defenses do not support decertification.

As for fairness and procedural impact, DAC reiterates its concern that plaintiffs' claims "require[] substantial individualized determinations" resulting in numerous "mini-trials." Id. at 29. As discussed, these concerns do not warrant decertification. Plaintiffs advance one theory generating common questions that can be answered through common proof. Accordingly, the court denies DAC's motion for decertification.

23

## IV.

In sum, the court GRANTS plaintiffs' motion [D.E. 103] for class certification and DENIES defendant's motion [D.E. 106] for collective decertification. The court reserves the right to decertify or modify the class in light of developments in the litigation. See Gen. Tel. Co. of the Sw., 457 U.S. at 160; Williams v. Martorello, 59 F.4th 68, 92 (4th Cir. 2023); Fed. R. Civ. P. 23(c)(1)(C). The parties SHALL meet and confer concerning future proceedings. They SHALL submit a proposed schedule no later than March 18, 2024.

SO ORDERED. This _8_ day of February, 2024.

JAMES C. DEVER III
United States District Judge

24