IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-478-BO

| | | |
|---|---|---|
| MATTHEW HODGE, *et al.*, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, | ) ) ) | |
| Defendant. | ) ) | |

This matter comes before the Court on defendant's motion for summary judgment [DE 138]. Plaintiffs responded in opposition [DE 144] and defendant replied [DE 147]. A hearing was held before the undersigned on September 18, 2025, in Raleigh, North Carolina. The Court entered a notice of intent to consider granting summary judgment in favor of plaintiffs. [DE 154]. Defendant responded [DE 156] and plaintiffs replied [DE 157]. In this posture, the motion is ripe for ruling. For the following reasons, defendant's motion for summary judgment is denied, and the Court enters partial summary judgment in favor of plaintiffs.

## BACKGROUND

The North Carolina Department of Adult Correction (DAC), defendant, operates 65 facilities throughout the state. Plaintiffs are a certified Rule 23 class and FLSA collective of current and former correctional officers and sergeants employed by the DAC, though the parties routinely refer to the whole class and collective as correctional officers, or COs. Plaintiffs were or are paid under Section 7(k) of the FLSA, which provides for payment of overtime based on a 28-day work

period known as a "tour of duty." 29 U.S.C. § 207(k). Plaintiffs are entitled to overtime pay for all hours worked over 171 hours during their 28-day tours of duty. DAC typically schedules the COs to work 160 hours during a tour of duty. In addition to the overtime requirements of the FLSA, DAC's policy is to pay its employees straight time wages for all the time they work "caught in the gap" between 160 hours and 171 hours. [DE 1-2, pp. 6–7].

The COs go on the clock at their morning lineup, and their shifts end when they are relieved from their posts. They are typically scheduled to work 12.25 hour shifts. [DE 145, ¶ 23]. Sometimes, COs are called to respond to emergencies before or after their shifts while they are in the prisons. *Id.* at ¶¶ 115–116. In order to respond to emergencies, the COs must remain constantly vigilant whenever they are inside the prisons. The central dispute in this case is whether that vigilance is the COs' principal work activity, and therefore whether they begin working compensable hours as soon as they enter the prisons. Because DAC has no time clock, the best evidence available for determining when COs are in the prisons is a "Gatelog" swiping system, whereby officers swipe in on arrival and swipe out when they leave. DAC does not use the Gatelog as a time clock; rather, its purpose is to maintain safety by creating a record of who is inside the prisons.

Plaintiffs assert two claims: for unpaid overtime under the Fair Labor Standards Act (FLSA) and for breach of contract.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met,

2

the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

## I. FLSA

Under the FLSA, employers must compensate employees for all time worked. *See* 29 U.S.C. §§ 203(g), 207(a)(l). "Under the continuous workday rule, the compensable workday begins with the first principal activity of a job and ends with the employee's last principal activity." *Perez v. Mountaire Farms. Inc.*, 650 F.3d 350, 363 (4th Cir. 2011) (quotations omitted). Employees must be paid for all the time between "the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). The whole continuous workday (except for bona fide meal periods, *see Perez*, 650 F.3d at 363) is compensable, even if the employee spends part of that time on activities that would otherwise be non-compensable, like walking. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

The Portal-to-Portal Act of 1947 amended the FLSA, clarifying that compensable time

3

does not include "activities which are preliminary to or postliminary to [an employee's] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a). The term "principal activity" includes all activities that are an "integral and indispensable" part of the principal activity. *Steiner v. Mitchell*, 350 U.S. 247, 252- 53 (1956). An act is "integral and indispensable" if it is an "intrinsic element of [principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014) (quotation omitted).

It can fairly be said that a correctional officer's principal job responsibility is to supervise offenders and maintain the safety and security of offenders and others inside the facility. [DE 156, p. 4]; [DE 157, p. 4]; [DE 145, ¶ 12]. Relying on the morning lineup as a clear-cut beginning to the continuous workday, defendant construes the requirement that COs remain vigilant for emergencies as a preliminary, non-compensable duty.

Defendant cites cases indicating that the possibility an employee may be called to action during otherwise non-compensable time does not make that time compensable. Their cases, however, are distinguishable from the present case. In *Llorca v. Sheriff, Collier Cnty., Fla.*, 893 F.3d 1319, 1322 (11th Cir. 2018), sheriff's deputies sued their employer arguing the time they spent commuting to and from work in marked police cars was compensable because they were required to monitor their radios for emergencies during the commute. But in that case, the court recognized that Congress had explicitly limited the compensability of the commute: "activities performed by an employee which are incidental to the use of [an employer's] vehicle for commuting shall not be considered part of the employee's principal activities." *Id.* at 1327 (citing

4

29 U.S.C. § 254(a)). The COs in this case do not seek payment for their commutes.

In *Akpeneye v. United States*, Pentagon police officers' meal breaks were found non-compensable even though they had "ongoing security duties during their breaks" and would frequently respond to emergencies. 990 F.3d 1373, 1384 (Fed. Cir. 2021). The court noted that "if Plaintiffs were interrupted during one break period, they were able to use their other break period as a meal period." *Id.* Although Pentagon officers frequently responded to emergencies, the risk that they would miss both breaks was too remote to render all break time compensable. Besides, the COs in this case do not seek payment for breaks.

The undisputed evidence in the present case shows that once the COs entered the prisons, they had to remain alert and vigilant at all times in order to maintain the facilities' security. This duty commenced their continuous workday. Defendant identifies several areas of factual dispute, including whether COs were paid when they actually responded to emergencies off shift, whether they all had the same job duties (given that some are "correctional officers" and some are really "sergeants"), whether COs would even have the opportunity to encounter inmates before their morning lineup given the different layouts of the numerous facilities, and what, exactly, the COs were actually doing in the time before the lineup. None of these issues are material.

In order to argue that plaintiffs were paid for all compensable time, defendant admits that COs would—not just theoretically, but actually—be called to respond to emergencies off shift. [DE 140, ¶¶ 115, 116]. This is sufficient to establish that the COs, as soon as they entered the prison facility, had to be ready to spring to action if an emergency occurred. Whether COs are paid for *actually* responding to emergencies is immaterial given that the COs' principal activity is maintaining a *preparedness* to respond. Sergeants and correctional officers alike responded to emergencies off shift. *Id.* Whether the layout of any individual facility lends itself to a pre- or post-

5

shift encounter between inmates and COs is immaterial because the COs had to be prepared to respond to emergencies regardless of whether they were in the room with the inmates involved when the emergency began. The COs' off-shift activities—for example, defendant points to evidence of COs making conversation or sipping coffee—are also immaterial, given that these activities do not impede the COs' ability to spring to action.

Defendant argues the amount of uncompensated time plaintiffs spend inside the prisons is de minimis. The Fourth Circuit considers three factors in determining whether otherwise compensable time is de minimis: "(1) the practical difficulty the employer would encounter in recording the additional time; (2) the total amount of compensable time; and (3) the regularity of the additional work." *Perez*, 650 F.3d at 373. All three factors weigh in plaintiffs' favor.

First, to establish the practical difficulty of recording off-shift time, defendant argues that COs should not be able to

> "come to the facility two hours before his or her shift, sit in the breakroom and eat a meal, and be paid for that time. It would be impractical, if not impossible, for DAC to implement a timekeeping system consistent with Plaintiffs' theory of the case that would not also require DAC to pay millions of dollars in additional wages to correctional officers based solely on their personal predilections."

[DE 139, p. 26]. This is an issue cured by better administration. If the employees should not be in the facility at certain times, defendant can set policies restricting how long before or after shift they may enter or exit the prison. Furthermore, defendant can easily install a time clock.

Second, the total amount of compensable time is great enough to defeat a de minimis argument. Defendant argues most officers spent less than ten minutes of daily uncompensated time inside the facilities, citing cases where the daily uncompensated periods at issue were less than ten minutes, and were therefore de minimis. *See, e.g., Lyons v. Conagra Foods Packaged Foods LLC*, 899 F.3d 567, 584 (8th Cir. 2018); *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984).

6

The Fourth Circuit in *Perez* rejected a bright-line rule that uncompensated time under ten minutes per day is de minimis. 650 F.3d at 373. Rather, the *Perez* court found substantial uncompensated time when the "annual amount represents a full week's wages," and considered the compensable amount for the entire uncompensated period. *Id.* at 374. Since it is appropriate to consider the aggregate amount of compensable time, and both parties recognize millions of dollars are at stake, the amount of time is not de minimis. *See id.*

Third, while there are examples of COs working shifts without spending any uncompensated time in the facilities, the uncompensated time is not merely occasional. Defendant's expert report concludes 12.9% of the class members were paid for more time than the Gatelog indicates they spent in the prisons. [DE 141-62, ¶ 27]. Only a minority of plaintiffs spent time in the facilities less than or equal to the amount of time for which they were compensated.

## II. Breach of Contract

It is undisputed that DAC has a policy codified in its State Human Resources manual, New Employee Manual, and Compensatory Time Leave policy to pay correctional officers for all the time they work. [DE 139, p. 27]. "Under North Carolina law, 'a unilateral contract is defined as a promise by one party, or an offer by him to do a certain thing, in the event the other party performs a certain act . . . and. . . [the] offeree can accept [the offer] by meeting its conditions.'" *Norman v. Loomis Fargo & Co.*, 123 F.Supp.2d 985, 988 (W.D.N.C.2000) (quoting *White v. Hugh Chatham Memorial Hosp., Inc.*, 97 N.C.App. 130, 131–32 (1990)). Therefore, upon employees' performance of their jobs, promises contained in employee handbooks and policy manuals can create enforceable contractual obligations. *See White v. Hugh Chatham Mem'l Hosp., Inc.*, 97 N.C. App. at 132 (personnel policies handbook created a unilateral contract).

Defendant argues the FLSA preempts plaintiffs' breach of contract claim in part.

7

Generally, the FLSA preempts state law claims, including breach of contract claims, which aim to recover the same unpaid overtime wages required by the FLSA because "Congress prescribed exclusive remedies in the FLSA for violations of its mandates." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007). Only those claims that duplicate the protections of the FLSA, however, are preempted. *See, e.g., Mould v. NJG Food Serv., Inc.*, No. 13-1305, 2014 WL 1430696, at *3 (D. Md. Apr. 11, 2014). "[C]ontract claims remain cognizable under state law if they are based on employment contracts with terms that are more generous than the guarantees in the FLSA." *Pitts v. LStar Dev. Grp., Inc.*, No. 5:20-CV-525-FL, 2021 WL 4236871, at *4 (E.D.N.C. Sept. 16, 2021) (quoting *Epps v. Scaffolding Sols., LLC*, No. 2:17-CV-562, 2019 WL 11254781, at *2 (E.D. Va. Jan. 4, 2019)).

The New Employee Manual guarantees overtime payments which are calculated automatically by DAC and include a "shift premium, holiday premium, weekend premium, and on-call/callback pay." [DE 146-10, pp. 24–25]. These provisions are more generous than the requirements of the FLSA. Plaintiffs seek to recover the amounts owed to them under the contract, which include more than the base overtime requirements imposed by the FLSA. The breach of contract claim is not preempted. The time plaintiffs seek to recover under their breach of contract theory is compensable for the reasons stated above: the COs' core work duty is their readiness to spring to action, and they are working when they are in the prisons.

### III. Damages

The parties agree that summary judgment would be inappropriate as to damages. The Court nevertheless addresses two damages issues: defendant's offset defense and its damages calculation regarding non-opt-in plaintiffs.

First, Defendant asserts an offset defense, arguing the damages should be reduced by the

8

amount that COs were overpaid. The Gatelog data suggest that some COs would spend less time in the prison than that for which defendant compensated them: defendant's expert report concludes 12.9% of the class members were paid for more time than the Gatelog indicates they spent in the prisons. [DE 141-62, ¶ 27].

Through its offset defense, DAC seeks to credit these overpayments to employees against the amount due to them in unpaid wages. The court in *Ketner v. Branch Banking & Tr. Co.*, No. 1:14CV967, 2016 WL 3566222 (M.D.N.C. June 27, 2016) rejected a similar offset defense in the FLSA context. It explained offset against back pay awards are "inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions" and distinguished the narrow exceptions where offset was allowed in the FLSA context. *See id.*, 2016 WL 3566222, at *5 (quoting *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974)). The FLSA cases where offset is allowed are characterized by a disconnect between work periods and pay periods, such that the employer briefly over- or under-pays an employee in one period to account for a correction in the next. Since the underpayments in this case arise not from administratively motivated approximations but from defendant's nonpayment for a particular kind time worked, and the overpayments were not meant to remedy prior or anticipated underpayments, offset is inappropriate here. *See id.*

Second, a related issue manifests itself in defendant's damages calculation. Defendant's expert calculated damages by comparing the amount of time individual plaintiffs remained in the facilities, as reflected by the Gatelog data, with the amount of approved time. The difference between those figures is the amount of unpaid compensable time for the individual plaintiff. [DE 141-62, ¶ 12]. That amount of time multiplied by the applicable wage rate is the amount of money damages for that individual plaintiff's unpaid compensable time. Plaintiffs' expert filed a rebuttal

9

to defendant's expert report. [DE 146-4]. Plaintiff's expert claims that defendants' calculation is flawed because the statistical analysis code used to compute the damages amount would "set the wage rate equal to zero" for all COs who were not opt-ins and worked overtime. *Id.* at pp. 5–6. Having determined that plaintiffs are owed payment for the time spent in the prisons and defendants' offset defense is inapplicable here, the Court concludes that the damages calculation may not omit the unpaid time worked by non-opt-in plaintiffs.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 138] is DENIED. The Court enters partial summary judgment in favor of plaintiffs pursuant to Fed. R. Civ. P. 56(f). There is no genuine dispute of fact material to liability, and plaintiffs are entitled to a judgment as a matter of law. The record being insufficient to support summary judgment on damages, defendant is DIRECTED to provide, within fourteen days of the entry of this order, updated damages disclosures, including updated payroll and Gatelog data for the class and an updated class list.

SO ORDERED, this _2_ day of ~~February~~ *March* 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

10